UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF WISCONSIN

THE ESTATE OF JAMES
RIVETT, by its Personal Representative
Peter Angilello,

      Plaintiff,

      v.                           Case No.:

WAUKESHA COUNTY,
KEVIN REILLY (in his individual
capacity), and
BREGITTA PEAVY (in her
individual capacity),

      Defendants.

# COMPLAINT

NOW COMES THE PLAINTIFF, The Estate of James Rivett, by its Personal Representative, Peter Angilello, by its attorneys, Gregory R. Wright Law Offices, S.C., by Gregory R. Wright, Erik Johnson and Jenna Ashbeck; and Gingras, Thomsen & Wachs by Paul A. Kinne, and hereby states the following as the Complaint in the above-referenced matter.

## NATURE OF PROCEEDINGS

1.     This is a civil action under 42 U.S.C. sec. 1983 and the Fourteenth Amendment to the United States Constitution, including but not limited to the Substantive Due Process Clause, brought to redress the defendants' deliberate indifference to a serious medical condition, namely suicide, at the Waukesha County Mental Health facility (WCMH), that resulted in the death by suicide of James Rivett (Rivett).

## PARTIES

2. At all times relevant to this action, Rivett was an adult resident of the State of Wisconsin. He died on August 23, 2018. Accordingly, his estate, by Personal Representative Peter Angilello, is the proper plaintiff.

3. Waukesha County is a municipal corporation organized pursuant to the laws of the State of Wisconsin. Waukesha County operates the WCMH facility.

4. At all times relevant hereto, Kevin Reilly (Reilly) has been an adult resident of the State of Wisconsin, employed at the WCMH facility. All actions attributed to him in the complaint were taken intentionally or in a deliberately indifferent manner. Moreover, all his actions were taken under color of law and within the scope of his employment.

5. At all times relevant hereto, Bregitta Peavy (Peavy) has been an adult resident of the State of Wisconsin, employed at the WCMH facility. All the actions attributed to her in the complaint were taken intentionally or in a deliberately indifferent manner. Moreover, all her actions were taken under color of law and within the scope of her employment.

## JURISDICTION and VENUE

6. This court has jurisdiction over plaintiff's claims pursuant to 42 U.S.C. sec. 1983 and the Fourteenth Amendment to the United States Constitution, and 28 U.S.C. secs. 1331 and 1343.

7. Venue in the Eastern District of Wisconsin pursuant to 28 U.S.C. sec. 1391 is proper insofar as the defendant is located in this district, and the events giving rise to the claim took place within this district.

## FACTUAL ALLEGATIONS

8. On or about August 16, 2018, probable cause was found to involuntarily commit James Rivett under Wis. Stat. § 51.15 for being a danger and threat to himself due to recent suicide attempts and ideations. He was involuntarily committed to WCMH; that is, Rivett was not free to leave WCMH. He was in the custody and control of WCMH.

9. Individuals like Rivett committed to WCMH are at heightened risk of suicide; that was a chief reason they were placed at WCMH.

10. Rivett was involuntarily committed to WCMH because he engaged in a suicidal act.

11. Rivett suffered from mental illness at the time he was involuntarily committed to WCMH.

12. Staff at WCMH was required to conduct wellness checks on all confined patients at WCMH. Upon information and belief, said checks were not conducted as frequently as proscribed by rules at WCMH, and insofar as they were conducted, the checks were performed in a *pro forma*, cursory fashion only, if they were performed at all.

13. Staff at WCMH was supposed to check on Rivett's well-being every 15 minutes.

14. A breakaway door is a door designed to break if a patient were to attempt to anchor a rope or anything similar to a rope in an effort to hang oneself.

15. Prior to January, 2018, policymakers with Waukesha County knew that bathrooms with non-breakaway doors posed a safety threat to suicidal patients at WCMH.

16. As early as May 24, 2018, officials at WCMH knew that other hospitals had "been hit hard on safety and ligature risks" by auditing groups.

3

17. Additionally, WCMH policy allowed patients to have their bedroom doors closed at night.

18. The rooms at WCMH had private bathrooms, and there was no in-room video surveillance. While in one's room, a patient had access to sheets, towels and other items with which a patient could hang himself or herself.

19. In fact, prior to the evening of August 22, 2018, Rivett had requested extra bed sheets and staff at WCMH had provided them to him.

20. On August 22, 2018, Rivett was assigned to Room 155 on Unit B. Rivett's sister visited him on that day, and noted that he was agitated and delusional. Rivett told his sister that he was going to kill himself because Rivett falsely believed he was going to be sent to prison on August 23rd.

21. Rivett's sister conveyed her concerns to Rivett's husband, Peter Angilello. Angilello then called Reilly at WCMH.

22. In the call with Reilly, Angilello stated both Angilello and Rivett's sister were concerned for his welfare, and that Rivett was highly anxious and paranoid. Angilello asked Reilly to ensure WCMH staff pay extra close attention to Rivett. Reilly promised he would do so, but Reilly never passed on the information to staff at WCMH, nor did he document the call with Angilello.

23. At 7:38 p.m. on August 22, 2018, WCMH social worker Brenda Cooper updated Rivett's treatment plan. That treatment plan included a finding Rivett was reported to have suicidal ideation with plans to overdose on sleeping pills, jump off a roof or to hang himself. The note further documented that he was reported to have twice attempted self-hanging

4

"recently," and that he had attempted to jump out of a vehicle moving at a high rate of speed.

24. Reilly's shift ended at about 11:15 p.m., and he went home without informing anyone of Rivett's condition or the concerns relayed by Angilello.

25. Prior to his departure and at all times during Rivett's stay at the facility, Reilly knew that Rivett was at substantial risk of committing suicide.

26. At about 7:00 a.m. the following morning, WCMH staff member Peavy *recorded* that she viewed Rivett in his bed.

27. Upon information and belief, this check never took place. Alternatively, if it did take place, it was so perfunctory as to be the same as not doing any check at all.

28. Prior to 7:00 a.m. on August 23, 2018, Peavy knew that Rivett was at substantial risk of committing suicide.

29. Prior to 7:00 a.m. on August 23, 2018, policymakers at Waukesha County knew that staff like Peavy frequently failed to do room checks.

30. At some point that night, Rivett took a bed sheet into the bathroom attached to his room. He fashioned it into a ligature and tied it to the bathroom door. He then used the ligature to hang himself.

31. Upon information and belief, no patient check was performed on Rivett by any staff member at 7:15a.m.

32. Shortly before 7:36 a.m., WCMH staff member Brian Leon made his way into Rivett's room. The door to the bathroom was closed. Leon knocked but no one answered. When Leon attempted to open the door, he had to use considerable force. When he finally opened the door, he knocked Rivett's dead body to the floor.

5

## CAUSE OF ACTION AGAINST WAUKESHA COUNTY
## DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED
## OFFICIAL CAPACITY CLAIM

33. Plaintiff states the preceding paragraphs as if set forth fully herein.

34. Waukesha County's knowing failure to have policies, procedures and / or protocols by which suicide risk could be identified, by which suicidal detainee-patients could be monitored for suicide prevention, and by which rooms would be kept as safe as possible for patients at heightened risk of self-harm violated Rivett's rights as set forth in the Fourteenth Amendment to the United States Constitution, as such failure demonstrates a deliberate indifference to a known serious medical condition (suicide).

35. Waukesha County's conduct alleged in the previous paragraph caused Rivett severe and permanent physical, emotional, psychological and economic injuries, including death.

## CAUSE OF ACTION AGAINST REILLY
## DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED
## INDIVIDUAL CAPACITY CLAIM

36. Plaintiff states the preceding paragraphs as if set forth fully herein.

37. By engaging in the conduct set forth in this complaint, Reilly violated Rivett's rights as set forth in the Fourteenth Amendment to the United States Constitution, as such failure demonstrates a deliberate indifference to a known serious medical condition (suicide).

38. Reilly's conduct alleged in the previous paragraph caused Rivett severe and permanent physical, emotional, psychological and economic injuries, including death.

## CAUSE OF ACTION AGAINST PEAVY
## DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED
## INDIVIDUAL CAPACITY CLAIM

39. Plaintiff states the preceding paragraphs as if set forth fully herein.

40. By engaging in the conduct set forth in this complaint, Peavy violated Rivett's rights as set forth in the Fourteenth Amendment to the United States Constitution, as such failure demonstrates a deliberate indifference to a known serious medical condition (suicide).

41. Peavy's conduct alleged in the previous paragraph caused Rivett severe and permanent physical, emotional, psychological and economic injuries, including death.

WHEREFORE, the plaintiff demands a trial by jury and the following relief:

1. Judgment in an amount sufficient to compensate Rivett for his injuries and losses;

2. An award of punitive damages against Reilly and Peavy in a sum sufficient to punish them and deter others from acting similarly;

2. Equitable relief designed to prevent future violations of the law;

3. Pre- and post-judgment interest;

4. An award of attorneys' fees and costs; and

5. Any other relief the Court deems just to award.

Dated this __17th__ day of August, 2021.

    **s/ Gregory R. Wright**
Attorney Gregory R. Wright
State Bar No. 1017892
gwright@gregwrightlaw.com
**s/ Jenna Ashbeck**
Attorney Jenna Ashbeck
State Bar No.1096111
jashbeck@gregwrightlaw.com
**s/ Erik C. Johnson**
Attorney Erik C. Johnson
State Bar No. 1049899
ejohnson@gregwrightlaw.com

Gregory R. Wright Law Offices, S.C.
50 W. Montello St.
PO Box 280
Montello, WI 5394
Telephone: 608-960-9951

**s/ Paul A. Kinne**
Attorney Paul A. Kinne
State Bar No. 1021493
Gingras, Thomsen & Wachs, LLP
8150 Excelsior Drive
Madison, WI 53717
Telephone: 608-833-2632
kinne@gtwlawyers.com

8